UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENNADY BARSKY,<br><br>  Plaintiff,<br><br>  v.<br><br>SPIEGEL ACCOUNTANCY CORPORATION, et al.,<br><br>  Defendants. | Case No. 14-cv-04957-TEH<br><br>**ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS COMPLAINT** |

This matter is before the Court on Defendants' partial motion to dismiss Plaintiff's complaint. The Court has carefully considered the arguments of the parties in the papers submitted, and finds this matter suitable for resolution without oral argument, pursuant to Civil Local Rule 7-1(b). Defendants' motion is hereby GRANTED, for the reasons set forth below.

**BACKGROUND**

Until the fall of 2012 and spring of 2013, Plaintiff Gennady Barsky ("Plaintiff") managed multiple investment organizations, including Pharaoh Investments, LLC ("Pharaoh") and Lodgepole Investments, LLC ("Lodgepole") with his partners Max Michael Berman ("Berman") Margaret Louise Taylor ("Taylor"), and John William Simonse. Compl. ¶¶ 15, 18, 20, 37, 45 (Docket No. 1). However, a series of events starting in early 2012 resulted in Plaintiff's falling out with his partners, his resignation from these investment organizations, his bankruptcy, and a lawsuit against him by Lodgepole and Taylor. *Id.* ¶¶ 20, 22, 43, 45. Plaintiff, Lodgepole and Taylor settled that lawsuit in September of 2013, for the transfer of certain real estate properties and cash from Plaintiff to Lodgepole and Taylor, for which Plaintiff estimated the value to be approximately $10,500,000. *Id.* ¶ 49; Ex. 8 to *id.* at 8 (Docket No. 1-3).

Defendant Jeffrey Spiegel is the manager of Defendant Spiegel Accountancy Corporation (collectively "Defendants"). Compl. ¶ 21. Defendants were hired as accountants for Pharaoh and Lodgepole following Plaintiff's resignation from these entities. Compl. ¶ 21, 45. Plaintiff alleges that, in the course of providing accounting services to Pharaoh, Lodgepole, and other clients, Defendants violated the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), and also committed various torts. Compl. ¶¶ 69-129.

Defendants now move to dismiss the RICO claims, as well as the claims of intentional interference with prospective economic advantage, conversion, and aiding and abetting the same. Mot. at 1 (Docket No. 12). However, Defendants do not move to dismiss the claims for breach of fiduciary duty, negligence, or breach of contract. *Id.*

**LEGAL STANDARD**

Rule 12(b)(6) requires dismissal when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. A court may consider the pleadings, along with any exhibits

1  properly attached thereto.  *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896
2  F.2d 1542, 1555 n.19 (9th Cir. 1989).
3        "[I]f a complaint is dismissed for failure to state a claim upon which relief can be
4  granted, leave to amend may be denied, even if prior to a responsive pleading, if
5  amendment of the complaint would be futile."  *Albrecht v. Lund*, 845 F.2d 193, 195 (9th
6  Cir. 1988).

**DISCUSSION**

      Defendants move to dismiss six of Plaintiff's nine causes of action: the first and second causes of action, alleging RICO violations and a RICO conspiracy; the sixth cause of action, alleging intentional interference with prospective economic advantage; the seventh cause of action, alleging conversion; the eighth cause of action, alleging conspiracy to commit intentional interference with prospective economic advantage and conversion; and the ninth cause of action, alleging the aiding and abetting of intentional interference with prospective economic advantage and conversion.  As discussed below, Plaintiff has failed to state any of these claims, requiring their dismissal.

**I.  Plaintiff Has Failed to State a Claim for RICO Violations**

      "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'"  *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (quotation omitted) (citing 18 U.S.C. §§ 1962(c), 1964(c)).

      Here, Plaintiff's allegations do not plausibly allege any racketeering activity. Moreover, even if they did, they do not make out a pattern of such activity for RICO purposes.

3

**A. Plaintiff has not alleged any plausible racketeering activity**

As relevant to this case, the "predicate acts" that constitute racketeering activity include "any act which is indictable under" statutes proscribing mail fraud and wire fraud, as well as "any offense" involving fraud in connection with a bankruptcy proceeding.  18 U.S.C. § 1961(1)(B), (D).  Mail or wire fraud consists of using the mail or wires to perpetrate a "scheme or artifice to defraud."  18 U.S.C. §§ 1341, 1343.  Bankruptcy fraud consists of "knowingly and fraudulently . . . mak[ing] a false entry in any recorded information . . . related to the property or financial affairs of a debtor" who has filed for Chapter 11 bankruptcy.  18 U.S.C. § 152(8).

"[Federal] Rule [of Civil Procedure] 9(b)'s requirement that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity applies to civil RICO fraud claims."  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (quotation and citation omitted).  "Rule 9(b) requires a plaintiff averring fraud to plead the 'who, what, when, where, and how' of the alleged misconduct.  He must also offer an explanation as to why the statement or omission complained of was false or misleading."  *Johnson v. Wal-Mart Stores, Inc.*, 544 F. App'x 696, 698 (9th Cir. 2013) (quotation and citation omitted).

The ultimate standard for evaluating the sufficiency of a pleading, however, is *plausibility*.  An allegation is not plausible where there is an "obvious alternative explanation" for the conduct.  *Iqbal*, 556 U.S. at 682 (discrimination was not plausible explanation for arrests of suspected terrorists where arrests were justified by non-discriminatory law enforcement purposes); *Twombly*, 550 U.S. at 567-68 (alleged conspiracy of telecommunications companies not to compete was not plausible where "obvious alternative explanation" was maintaining the status quo from their tradition of local monopolies).

The Eleventh Circuit case of *American Dental Association v. Cigna Corporation*, 605 F.3d 1283 (11th Cir. 2010), provides a lucid guide to the application of Rule 9(b), *Twombly*, and *Iqbal* to RICO violations based on mail and wire fraud.  The plaintiffs in

1    that case, three dentists, alleged that dental insurance companies fraudulently described
2    their policies of "downcoding" dental procedures, resulting in diminished payments to the
3    dentists. 605 F.3d at 1286. The plaintiffs alleged that at least six examples of
4    advertisements, agreements, fee schedules, emails and letters were false because they
5    described the payment policies as using "standard dental coding procedures," but the
6    plaintiffs claimed the actual policies were not consistent with their interpretation of
7    standard procedures. *Id.* at 1292. The court affirmed the dismissal of the RICO
8    complaints based on mail and wire fraud with prejudice. *Id.* at 1288, 1296. The court
9    found that the plaintiffs had not pled fraud with the particularity required by Rule 9(b),
10   because they had not shown how the communications were actually false or misleading.
11   *Id.* at 1291-92. As a result, plaintiffs did not state a plausible claim to relief under
12   *Twombly* and *Iqbal*. *Id.* at 1293.
13       In this case, Plaintiff alleges four groups of predicate acts. None state a plausible
14   claim of racketeering activity.

### 1. The Amended Pharaoh Schedule K-1

Plaintiff first points to Defendants' mailing and filing an Amended Schedule K-1 tax form for Pharaoh on July 19 and 22, 2013, which did not include Plaintiff's ownership interest in the company (through another entity, B Cubed). Defendants first filed a Schedule K-1 showing B Cubed's 50% interest in April of 2013; they filed an Amended Schedule K-1 in July that did not show that interest; and they filed a Second Amended Schedule K-1 at an unknown time in February or March of 2014 which once again showed the 50% interest. Compl. ¶¶ 23-24, 30-31, 33; Opp'n at 4 (Docket No. 20). It is undisputed that the Amended Schedule K-1 was incorrect when it was filed in July of 2013. Mot. at 2.

Plaintiff alleges three "schemes" that were perpetrated by the filing of the incorrect Amended Schedule K-1: depriving Plaintiff of his interest in Pharaoh; forcing the

conversion of Plaintiff's Chapter 11 bankruptcy to Chapter 7; and giving Taylor the "upper hand" in litigation against Plaintiff.  Compl. ¶¶ 26, 34, 53; Opp'n at 1.

First, the Court notes that Plaintiff has satisfied the specificity requirements of Rule 9(b).  Plaintiff alleges that Defendants used the mail or wires to send and file a particular document on July 19 and 22, 2013 that they knew to be false.  Moreover, the complaint clearly alleges what made the tax form false: it did not include the 50% interest that everyone agrees it should have.  Both the identity of the document, and the circumstances constituting fraud, are pled with the specificity required by Rule 9(b).

However, these allegations do not suggest a plausible mail, wire or bankruptcy fraud violation.  As noted above, an allegation of illegal activity is not plausible where there is an obvious alternative explanation for the conduct.  In this case, none of the schemes alleged above are plausible when compared to the obvious alternative explanations that Defendants simply made an inadvertent mistake and/or were following the instructions of their clients, Pharaoh and Simonse.  It is not plausible that Defendants would file a correct form, then deliberately change the form to an incorrect amount, and then change the form again to the correct amount, as part of a scheme to defraud.  If such a scheme existed at all, there is no plausible explanation for why Defendants would have filed a correct form in the first instance, unless the scheme only developed after the initial form was filed in April of 2013.  However, this contradicts Plaintiff's own timeline, which alleges that "this illegal and unjustified divestiture of B Cubed's interest in Pharaoh Investments came in 2012 . . . ."  Compl. at ¶ 27.

Moreover, the mailing and filing of the Second Amended Schedule K-1 are not predicate acts of racketeering activity.  The Second Amended Schedule K-1 was accurate, as all parties agree.  It is not plausible that filing an accurate tax form could be indictable as mail or wire fraud.  Plaintiff's only support for treating such an act as fraud, *United States v. Sampson*, 371 U.S. 75, is inapposite.  In *Sampson*, the Court held that mailings sent from the defendants to alleged victims of a scheme to defraud that were sent after the defendants had received the victims' money could nonetheless be used to indict the

6

1  defendants for mail fraud, because the mailings could have been used "for the purpose of
2  lulling [the victims] by assurances that the promised services would be performed," and
3  thereby preventing the victims from detecting the fraud.  371 U.S. at 81.  Here, by contrast,
4  Plaintiff alleges that the corrected Schedule K-1 was filed after Plaintiff's counsel alerted
5  Defendants' to the omission.  Opp'n at 4.  Hiding the alleged fraud was therefore not
6  plausibly a motive for filing the corrected Schedule K-1, and Plaintiff has not shown how
7  filing an accurate tax form could otherwise be considered as part of a scheme to defraud.

Because Plaintiff has not plausibly alleged that the mailing or filing of the Amended Schedule K-1 were plausibly indictable, the Court will not treat those acts as racketeering activity for Plaintiff's RICO claims.

### 2. The Lodgepole Form 1099

Second, Plaintiff alleges that Defendants committed mail, wire or bankruptcy fraud by filing amended tax return documents for Lodgepole Investments, because the documents included a Form 1099 for Plaintiff showing over $3 million in non-employee income attributable to "theft loss," and there was no basis for this amount.

The facts alleged by Plaintiff regarding the Lodgepole Form 1099 are as follows: on January 31, 2013, Taylor and Lodgepole filed a lawsuit against Plaintiff, alleging that he misappropriated funds from Lodgepole.  Compl. ¶ 43.  That lawsuit was settled on September 20, 2013.  *Id.* ¶ 49.  As stated in the Settlement Agreement, Lodgepole filed a proof of claim for $13,000,000, and Taylor filed a proof of claim for $1,705,436.04, in Plaintiff's bankruptcy action that was pending at the time.  Ex. 8 to *id.* at 2.  Plaintiff asserted in the Settlement Agreement that the value of the assets he transferred under the Agreement was "equal to, or greater than, $10,500,000." Ex. 8 to *id.* at 8.  However, Lodgepole and Taylor disputed the value of these assets, and therefore the value of the Settlement Agreement.  Ex. 8 to *id.* at 7-8.  The Settlement Agreement expressly contemplated that Lodgepole and Taylor would send a Form 1099 to Plaintiff: "the Parties agree that the issuance of tax documents shall not constitute a breach of this Agreement.

7

. . . The Lodgepole Entities further agree that any Form 1099 to be issued to [Plaintiff] shall be issued to him prior to December 31, 2013 . . . ." Ex. 8 to *id.* at 9-10. Plaintiff alleges that the Form 1099 was included in Lodgepole's amended tax returns, filed on September 20, 2013, and that he received it on December 31, 2013. *Id.* ¶¶ 48, 50.

Plaintiff alleges that the Form 1099 was "inaccurate and fraudulent," and that the alleged misappropriations improperly included a $25,000 wine purchase made by Taylor. *Id.* ¶ 47. In his opposition, Plaintiff lists what he views as "clear problems" with the amount of the Form 1099, including that he never agreed to accept such a Form, that he never agreed to the amount of Lodgepole and Taylor's claims, that the difference in Lodgepole and Taylor's claims and the value of the Settlement Agreement does not equal the amount on the Form 1099, that the Settlement Agreement provided that the parties would engage in further accounting, and that Defendants here are trying to shift the burden of proof on a motion to dismiss. Opp'n at 6.

Given the allegations and arguments described above, Plaintiff has not alleged a plausible indictable mail or wire fraud violation relating to the Lodgepole Form 1099. Plaintiff must allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires more than merely identifying a statement and claiming that it is false; rather, Plaintiff must allege enough facts so that the Court can determine that the alleged falsehood is plausible. *In re GlenFeld, Inc. Securities Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*. Apart from a single wine purchase for an amount far less than that on the Form 1099 on a shared credit card statement dating from three years before the Form 1099 was prepared, on which virtually all of the information is redacted, Plaintiff does not allege how the Form 1099 was incorrect with anything other than vague and conclusory statements. *See* Ex. 7 to Compl. at 1 (Docket No. 1-2). Plaintiff has not shown what, specifically, made the Form 1099 fraudulent, as required by Rule 9(b).

Even if the specificity requirements of Rule 9(b) were satisfied, Plaintiff has not plausibly alleged that Defendants could be indicted for mail or wire fraud for filing these

8

tax documents on behalf of Lodgepole. The facts, as alleged by Plaintiff, demonstrate that Lodgepole and Taylor believed that they had claims against Plaintiff worth almost $15,000,000, and that they settled for an amount estimated by Plaintiff at $10,500,000. The Settlement Agreement clearly indicates that the parties continued to dispute whether the settlement fully satisfied the value that Lodgepole and Taylor had allegedly lost, and expressly contemplated that Lodgepole would send a Form 1099 to Plaintiff. "The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Because the Settlement Agreement suggests that Defendants were acting pursuant to their clients' rights by sending the Form 1099 for an amount of over $3 million, it is not plausible that Defendants would be indicted for mail or wire fraud on these facts.

Nor is it plausible that Defendants committed fraud in relation to a bankruptcy proceeding, for the same reasons. Plaintiff has not put forward sufficient facts showing that the Form 1099 was plausibly fraudulent, as discussed immediately above, so it is also not plausible that Defendants would be indicted for bankruptcy fraud, even though Plaintiff's Chapter 11 bankruptcy was pending at the time.

Because Plaintiff has not plausibly alleged that the Lodgepole Form 1099 was fraudulent, the Court will not consider mailing or filing it as predicate acts of racketeering activity for Plaintiff's RICO claims.

### 3. Defendants' other accounting work

As a third alleged group of predicate acts of racketeering, Plaintiff claims that Defendants, along with Defendant Spiegel's prior accounting firm, Schoenholz & Spiegel, performed audits and other accounting services for investment companies managed by a third party named Mark Feathers. Compl. ¶ 58. Feathers was prosecuted by the Securities and Exchange Commission in 2012 for fraud related to various securities transactions. *Id.* ¶ 57. Defendant Spiegel was a witness for the SEC in the case, and he testified that Feathers and Feathers' companies "had issues with maintaining accurate books and records

9

1  for the funds." *Id.* ¶ 59 (quoting Ex. 9 to *id.* at ¶ 11). As evidence of Defendants' alleged
2  fraud, Plaintiff points to Feathers' motion to join Defendant Spiegel Accountancy
3  Company as a necessary defendant in the SEC action. Compl. ¶ 63.
4       Finally, as a fourth set of predicate acts, Plaintiff alleges that Defendants performed
5  accounting work for third party John Simonse. *Id.* ¶ 66. Simonse and his investment
6  organizations were defendants in multiple lawsuits for fraud related to their alleged
7  practice of securing loans with deeds of trust that were inferior to the deeds they owned,
8  foreclosing the deeded properties, and thereby wiping out the loan security and allowing
9  Simonse and his organizations to profit from the loans. *Id.* ¶ 65. Plaintiff does not allege
10 what fraud Defendants perpetrated in regard to Simonse's scheme, but only that
11 Defendants "have long provided accounting, audit, and/or tax services to John Simonse
12 and his various enterprises." *Id.* ¶ 66.
13      Plaintiff's allegations regarding Defendants' work for Feathers and Simonse fall far
14 short of the level of specificity required under Rule 9(b). Rather than specifying the who,
15 what, where, when, and how of Defendants' fraud, Plaintiff requests the Court to draw a
16 negative inference from the SEC's enforcement action against Feathers and the lawsuits
17 against Simonse, who are not parties to this action. Plaintiff admits that "he is unable at
18 present to allege wrongdoing with specificity." Opp'n at 9. He is correct; the allegations
19 of Defendants' fraud related to Feathers and Simonse do not satisfy Rule 9(b).
20      Because Plaintiff has not alleged any predicate acts of fraud related to Defendants'
21 work for Feathers and Simonse with sufficient specificity, the Court will not consider any
22 of these allegations as predicate acts of racketeering activity for Plaintiff's RICO claims.

### B. Plaintiff has not alleged a pattern of racketeering activity

25      Based on the allegations described above, Plaintiff has not alleged a pattern of
26 racketeering activity for RICO purposes. "[T]o prove a pattern of racketeering activity a
27 plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they
28 amount to or pose a threat of continued criminal activity." *H.J. Inc. v. NW. Bell Tel. Co.*,

492 U.S. 229, 239 (1989) (emphasis in original). The predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (quotation omitted). Continuity can be either closed-ended or open-ended; closed-ended continuity refers to "a series of related predicates extending over a substantial period of time," whereas open-ended continuity refers to predicate acts that, by their nature, suggest a risk of ongoing criminal activity, for example where "the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* at 242-43.

There is no "bright-line" rule for determining closed-ended continuity; instead, courts use a flexible approach to consider whether the facts demonstrate criminal conduct over a substantial period of time. *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995). In *Allwaste*, the court rejected the defendants' argument for a *per se* rule that closed-ended continuity requires a pattern of acts extending longer than one year, and remanded to allow Plaintiff to specify the dates of the alleged predicate acts, which Plaintiff suggested may have extended over thirteen months. *Id.*

However, courts routinely find that alleged racketeering activity lasting less than a year does not constitute a closed-ended pattern. *E.g.*, *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992). In *Turner*, a case about attorneys fraudulently collecting on a state court judgment, the court found that allegations of three fraudulent sets of communications between August of 2000 and February of 2001, followed by 94 communications in a two-month period in June and July of 2001, did not satisfy the closed-ended continuity requirement. 362 F.3d at 1231. Nearly all of the alleged misconduct occurred in two months in mid-2001, and the allegations did not show a threat of future criminal conduct, because the fraud was entirely related to a single state court judgment. *Id.*

In *Religious Technology Center*, another case about alleged attorney misconduct related to a state court lawsuit, the plaintiffs alleged as predicate acts that the defendants

1    received documents illegally in the spring of 1985, and attempted to introduce them into

2    evidence in October of the same year. 971 F.2d at 366. The court held that alleged

3    activity that "continued for six months at most" did not extend over a "substantial period

4    of time," and therefore failed to satisfy the continuity requirement. *Id.* Moreover, because

5    the only goal of the alleged misconduct related to the prosecution of a single lawsuit,

6    "there was no threat of activity continuing beyond the conclusion of that suit." *Id.*

7    However, even where allegations do not meet the requirements of closed-ended

8    continuity, they may be sufficient to demonstrate open-ended continuity. *See, e.g.*, *Ticor

9    Title, Ins. Co. v. Florida*, 937 F.2d 447, 450-51 (9th Cir. 1991); *Ikuno v. Yip*, 912 F.2d 306,

10   309 (9th Cir. 1990). In *Ticor Title*, the court affirmed a district court finding that a real

11   estate company's three episodes of forging lien release documents for various properties in

12   a 13-month period satisfied the continuity requirement, because the frequency of the

13   forgeries suggested that the "practice had become a regular way of conducting business" at

14   the company. 937 F.2d at 450. And in *Ikuno*, although it was a "close question," the court

15   held that the plaintiff sufficiently alleged a pattern where the defendant filed fraudulent

16   annual reports in 1982 and 1983, because there was no evidence that the defendant would

17   have stopped filing such annual reports so long as the organization remained in business.

18   912 F.2d at 309.

19   Here, as discussed above, Plaintiff has not alleged *any* plausible racketeering

20   activity. Because it is impossible to make a pattern out of nothing, these allegations are

21   clearly insufficient to satisfy RICO's pattern requirement.

22   If Plaintiff could improve his allegations to make a pattern of racketeering activity

23   plausible, dismissal with leave to amend would be appropriate. However, in this case,

24   even if Plaintiff had plausibly alleged that the mailing and filing of the Pharaoh and

25   Lodgepole tax documents was indictable for mail, wire or bankruptcy fraud, the allegations

26   would still not amount to a pattern of racketeering activity under RICO. The allegations

27   regarding Defendants' work for Feathers and Simonse are so deficient that the Court does

28   not consider them for this analysis.

Considering the allegations under a closed-ended analysis, Plaintiff has alleged the following timeline: the mailing and filing of the Amended Schedule K-1 on July 19 and 22, 2013; the filing of the amended Lodgepole tax returns on September 20, 2013; and the distribution of the Lodgepole Form 1099 to Plaintiff on December 31, 2013. This amounts to an alleged pattern of four acts in less than six months. Even assuming, without deciding, that Plaintiff sufficiently alleged that this activity meets the relatedness requirement, such a small number of acts in such a short period of time is less activity than that which was found insufficient in *Turner* and *Religious Technology Center*, and covers far less time than the possible 13-month pattern in *Allwaste*. Under the rule of these cases, Plaintiff has not plausibly alleged a closed-ended pattern here.

Neither has Plaintiff plausibly alleged an open-ended pattern of racketeering activity. Plaintiff has only alleged a small number of instances of fraud, relating to Defendants' work for specific clients resulting from the falling-out between Plaintiff and those clients. By their nature, these allegations are specific to Plaintiff's circumstances – his resignation from Pharaoh and Lodgepole, his bankruptcy, and his settlement with Lodgepole and Taylor. Like the defendants in *Turner* and *Religious Technology Center*, and unlike the defendants in *Ticor Title* and *Ikuno*, Plaintiff has only alleged that Defendants have acted fraudulently in relation to proceedings against Plaintiff. Plaintiff has given no plausible reason to conclude that Defendants would act fraudulently again, much less that fraudulent filings are a part of Defendants' regular way of conducting their legitimate business. Plaintiff therefore has not plausibly suggested any ongoing threat of criminal activity, so he has not demonstrated any open-ended continuity sufficient to allege a pattern of RICO violations.

### C. Plaintiff's RICO claims are dismissed with prejudice

Plaintiff has not plausibly alleged any predicate acts of racketeering activity. The only allegations of fraud that even approach plausibility are Defendants' mailing and filing of the Pharaoh Amended Schedule K-1 and Lodgepole Form 1099. However, even if

Plaintiff were able to amend his pleadings to make these allegations plausible, he would not have shown a pattern of racketeering activity for RICO purposes. As a result, amendment would be futile. Plaintiff's RICO and conspiracy to commit RICO claims are therefore DISMISSED WITH PREJUDICE.

**II.     Plaintiff Has Failed to State Certain of His Tort Claims**

In addition to the RICO violations, Defendants move to dismiss the claims for intentional interference with prospective economic advantage, conversion, and aiding and abetting and conspiracy to commit the same. Mot. at 11-12. Defendants argue, among other things, that Plaintiff's relevant economic relationships were already disrupted, and that Defendants did not "convert" Plaintiff's property by filing the tax forms described above. *Id.* Plaintiff does not respond to these arguments anywhere in his opposition. *See* Opp'n at 1-20. Defendants' motion to dismiss these causes of action is therefore GRANTED AS UNOPPOSED.

**CONCLUSION**

Plaintiff has failed to plausibly allege causes of action under RICO. Nor has Plaintiff shown how he has plausibly alleged intentional interference with prospective economic advantage, conversion, or aiding and abetting or conspiracy to commit these torts. Defendants' motion to dismiss Plaintiff's first, second, sixth, seventh, eighth and ninth causes of action is therefore GRANTED.

**IT IS SO ORDERED.**

Dated: 02/11/15                         _____
                                        THELTON E. HENDERSON
                                        United States District Judge

14